**\*NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |  |
|---|---|---|
| MONIQUE T. GILBERT, | : | |
| | : | Civil Action No. 07-452(FLW) |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| MICHAEL J. ASTRUE, in his | : | |
| official capacity as the | : | |
| Commissioner of Social | : | |
| Security | : | |
| | : | |
| Defendant. | : | |

---

**WOLFSON, District Judge**:

Plaintiff Monique T. Gilbert ("Plaintiff") appeals from the final decision of the Commissioner of Social Security ("the Commissioner"), Michael J. Astrue, denying Plaintiff disability benefits under the Social Security Act. The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). The general issue before this Court is whether Plaintiff is entitled to disability insurance benefits under sections 216(i) and 223 of the Social Security Act for the period beginning on October 21, 2002, the onset date of her alleged disability, through May 27, 2006, the date of the Administrative Law Judge's ("ALJ") denial of Plaintiff's disability benefits. The specific issue is whether the AJL's determination, at Step Four of the sequential process, that Plaintiff has the residual functional capacity to perform her past relevant work, is supported by substantial evidence. After

reviewing the administrative record, this Court finds that the ALJ's decision lacks the substantial evidentiary support required by 42 U.S.C. § 405(g). Thus, Plaintiff's case shall be **REMANDED** for further consideration by the Commissioner consistent with this Opinion.

## I.   Procedural History and Statement of Facts

On December 12, 2003, Plaintiff filed an application for disability insurance benefits with the Social Security Administration. Plaintiff's claim was initially denied, and she timely filed for reconsideration. On November 1, 2005, a hearing was held before an ALJ. The ALJ affirmed the decision of the Commissioner, and found that Plaintiff is not disabled within the meaning of the Social Security Act ("SSA"). Plaintiff then filed a timely request to the Appeals Council for review, which was denied on November, 20, 2006. Plaintiff now brings an appeal from the final decision of the Commissioner to this Court.

### A.   Review of the Medical Evidence

Plaintiff alleged that she became unable to work on October 21, 2002, due to back and neck problems and an enlarged liver. Administrative Record ("Admin. R.") at 69. These conditions were attributed to a motor vehicle accident that occurred in late 1999. At that time, Plaintiff was seen at the emergency room for complaints of head, neck, and back pain. Admin. R. at 462, 465. The x-ray revealed that Plaintiff's lumbar spine was normal.

2

Admin. R. at 466.  The final diagnosis was a low back injury, for which Plaintiff was placed on physical therapy. Admin. R. at 463, 406.

Two years and six months later, on October 21, 2002, Plaintiff saw Dr. J. Lombardi for complaints of back and neck pain stemming from the accident.  Admin. R. at 406.  While Dr. Lombardi concluded that Plaintiff's gait was within normal limits, she walked in a normal fashion, and the vascular status in both lower extremities was within normal limits, nonetheless, Dr. Lombardi proscribed percocet for the pain associated with Plaintiff's discomfort and noted that "lumbar epidural steroid injections would be appropriate." Admin. R. at 408.  Furthermore, Dr. Lomardi stated that Plaintiff "should remain entirely out of work" at that time. Id.  Thereafter, a series of lumbar epidural steroid injections were performed on Plaintiff.  On December 11, 2002, Dr. Lombardi reported that Plaintiff had a normal lumbar lordosis.  Admin. R. at 400. However, she demonstrated tenderness upon examination located in the L5/S1 area, and there was spasm present on the right L5-S1 area.  Plaintiff was instructed to undergo an MRI of the lumbosacral spine.  During this visit, Dr. Lombardi placed Plaintiff on Valium and opined that she should "remain entirely out of work."  Admin. R. at 401.

On December 26, 2002, an MRI of Plaintiff's lumbar spine showed a degenerative annular bulge at the L4-L5 disc level with

slight ventral thecal sac compression.  Admin. R. at 399.  Just weeks before, Plaintiff also had a MRI performed on her right knee, which revealed no menisci tear, mild to moderate arthritis with small joint effusion, and some swelling of the anterior cruciate ligament sheath.  Admin. R. at 402.  On January 4, 2003, Plaintiff had a cervical epidural steroid injection.  Admin. R. at 233-39.

On January 30, 2003, pursuant to the recommendation of Dr. Lombardi, Plaintiff underwent a lumbar discogram.  Admin. R. at 241-49.  The surgery showed a "positive provocative discogram at L4-5, negative L3-4 and L5-S1."  Admin. R. at 251.  On March 6, 2003, Dr. Lombardi performed a microdiscectomy to correct the issue by removing part of the disk in the lumbar region, specifically L4-L5.  Admin. R. at 260-73.

After her surgery, Plaintiff made several follow-up visits with Dr. Lomardi.  Both the March 2003 and May 2003 exams revealed at first that Plaintiff responded well to the surgery. Specifically, Plaintiff's range of motion with respect to her shoulder was normal, though, the neck motion was somewhat limited; her vascular status in both upper extremities was within normal limits; her gait was within normal limits; and there was no evidence of a limp.  Admin. R. at 390-96.  However, upon examination, Dr. Lomarbdi indicated that Plaintiff "had radiation of pain into her right lower extremity that radiated into the foot. This is indicative of tension on a nerve root."  Admin. R. at 392.

Furthermore, Plaintiff demonstrated tenderness located on the right buttock. Id. Notably, during the June and July 2003 follow-ups, Dr. Lomardi continued to indicate that Plaintiff had pain radiating into her right lower extremity that radiated into the foot. Admin. R. at 388, 385. Dr. Lombardi reported in his August 2003 follow-up that Plaintiff has improved 45% with surgery.

On October 3, 2003, once again, Dr. Lombardi performed an epidural steroid injection to ease the pain evidenced in the follow-up tests. Admin. R. at 350. However, during a November 2003 follow-up exam, Dr. Lombardi reported that although Plaintiff's physical exam revealed nothing extraordinary, Plaintiff continued to feel pain in her "greater trochanter area" and "the lumbosacral spine and left buttock area." Admin. R. at 378. He recommended additional radiographic studies; an MRI of the lumbosacral spine was to be performed. Admin. R. at 379. Another follow-up exam in December 2003 again reported similar test results as before. Specifically, Dr. Lombardi indicated that Plaintiff's lumbar range of motion was limited and her reflexes were normal. Admin. R. at 375. Plaintiff's muscle strength was full throughout her lower extremities. Admin. R. at 376. However, her pain persisted.[1]

---

[1] In January 2004, a physician at the Edison-Metuchen Orthopedic Group reported that Plaintiff's cervical and lumbar range of motion was somewhat limited. Admin. R. at 374. Her muscle strength was full and she could walk on her heels and toes. Id. However, she was unable to squat. Id.

In addition to Plaintiff's treating physician, Plaintiff also saw Dr. Francky Merlin, MD, for a consultative exam for New Jersey's Division of Disability Determination Services in February 3, 2004.  Dr. Merlin reported that Plaintiff was in no acute distress at the time.  Admin. R. at 361-62.  Her gait was normal and she had no difficulty getting up from a seated position or getting on and off the examining table.  Id.  The doctor observed that Plaintiff had full use of both hands and arms when dressing and undressing and her grasping strength and manipulative functions were not impaired.  Id.  Plaintiff was able to partially squat and could walk on her heels and toes.  Id.  Plaintiff's cervical range of motion was somewhat limited.  Id.  Ultimately, Dr. Merlin diagnosed that Plaintiff could sit, stand, walk, handle objects, hear, speak, and travel, although he determined that Plaintiff should not lift or carry heavy objects.  Id.

Plaintiff also saw Dr. Schneider, a State Agency medical consultant who reviewed the medical evidence and opined in March 2004 that Plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand/walk 6 hours in an 8-hour workday, sit 6 hours in an 8-hour workday, and had unlimited pushing and/or pulling ability.  Admin. R. at 366.  Moreover, Plaintiff could occasionally climb ramps/stairs, stoop, kneel, crouch, and crawl.  Admin. R. at 367.

On February 25, 2004, Dr. Lombardi examined Plaintiff for

6

complaints of extreme headaches and severe left sided neck pain. Admin. R. at 496. Apparently, Plaintiff was admitted to the ER the week prior and an MRI was performed which showed a right-sided osterophyte and possible herniation at C5/C6, as well as multiple areas of degeneration at C3/C4, C4/C5 and C5/C6. Id. Dr. Lombardi indicated that "it is difficult to explain why [Plaintiff] is having such acute exacerbation of her cervical pain after almost 4 years down the road from her MVA." Id.

On April 22, 2004, Plaintiff underwent neck surgery for an anterior cervical decompression fusion with instrumentation at C4-C5, C5-C6, performed by Dr. James E. Patti, MD. The follow-up exams in May and June 2004, after the surgery, showed that Plaintiff was improving. Thereafter, Dr. Lombardi saw Plaintiff in July and August 2004, wherein he noted that Plaintiff's physical exams revealed normal results, however, Plaintiff's pain persisted. Admin. R. at 512. Dr. Lombardi recommended a therapy program for the increased back pain, as well as right thigh pain; however, the insurance company refused to provide authorization. Id.

On October 13, 2004, Dr. Lombardi indicated that Plaintiff's pain, as she recounted, was the same as it was prior to her surgeries. Plaintiff had felt well for 6-7 months but the pain became severe again. Admin. R. at 516. The doctor recommended an epidural steroid injection, which he performed on November 11, 2004. Admin. R. at 518. Plaintiff's last exam with Dr. Lombardi

occurred on November 24, 2004. During the exam, the doctor reported that Plaintiff's condition has slightly improved. Admin. R. at 520. However, Dr. Lombardi indicated that the lumbar ROM showed decreased flexion, decreased extension, decreased LLF, decreased RLF; an exam of the spine reveals lumbar spine shows palpatory spinous tenderness. Admin. R. at 521. Accordingly, Dr. Lombardi concluded that Plaintiff had "difficulty with walking, standing, bending, sitting, lying, sleeping and [d]riving." Admin. R. at 520. Moreover, Plaintiff "appears to be in distress." Admin. R. at 521.

Plaintiff testified at the hearing that she switched orthopedic doctors due to her difficulties traveling one hour to get to Dr. Lombardi. Admin. R. at 539. Her new doctor, Dr. James Cozzarelli, MD, saw Plaintiff on October 5, 2005. He noted positive straight leg raising and his impression was lower back pain with radiculopathy. The doctor prescribed percocet and ordered an MRI. Admin. R. at 524. Dr. Cozzarelli reported on October 24, 2005, that Plaintiff's symptoms were the same. The MRI showed a small disc herniation at L4-L5 with some mild compression on the sac and nerve root. Admin. R. at 525. He continued to prescribe percocet and recommended Plaintiff see a pain management physician. Id.

**B.   Review of the Non-Medical Evidence**

Plaintiff at the time of the hearing was 42 years of age.

From 1993 through 2002, Plaintiff worked as a cook/server in the food industry and as a sales cashier at a department store. Admin. R. at 70. As a cashier, Plaintiff indicated that she carried clothes, lifted less than 10 pounds, and used machines, tools or equipment. Admin. R. at 94. Plaintiff also noted that she walked/stood seven hours a day and sat one hour a day. Id. Plaintiff testified at the hearing that due to her condition, she could only stand for 10 minutes and sit for 15 minutes. Admin. R. at 533. Plaintiff further testified that despite her surgeries, her back felt worse than before the surgeries. Admin. R. at 537. Additionally, Plaintiff testified to excruciating pain in her back, which radiated down to both legs and knee area; also, pain in her neck radiated down to both of her arms. Admin. R. at 535. The pain treatments, i.e., epidural injections and medications, provided little relief. Admin. R. at 538.

In regards to the degree of pain, Plaintiff indicated that on an average day, on a scale of 1-10, with 10 being the worst pain, her pain was between 5 and 7. Admin. R. at 542-43. In terms of her ability to function, Plaintiff stated that she can sit 10-15 minutes at a time, stand in one spot for 10 minutes, and walk 10-15 minutes. Admin. R. at 545. She has trouble bending and difficulty with overhead reaching and reaching around. Id. With regard to household chores, Plaintiff testified that she cannot clean her bathroom any longer, she has a limited physical ability to cook,

and her daughter comes over to assist her with cleaning.  Admin. R. at 547-49.  Plaintiff, in a Work History Report, stated that with regard to her job as a sales clerk at Stern's, she worked 8 hours a day, 5 days a week, which involved carrying clothes to put on racks, crouching, crawling, handling and grabbing big objects, and writing.  Admin. R. at 94.

### C.  The ALJ's Findings

After the hearing, the ALJ found that Plaintiff's degenerative disc disease of the cervical and lumbar spines were severe impairments that did not meet or equal requirements of the Listings of Impairments (the "Listing") set forth at 20 C.F.R. Part 404, Subpart P, Appendix.  Since disability could not be found at Step Three of the sequential evaluation process, the ALJ proceeded to Step Four.  There, the ALJ found that Plaintiff retained Residual Functional Capacity ("RFC") to perform a full range of work at the light exertional level.  Since Plaintiff's RFC did not exceed that of her past work as a cashier/sales clerk, the ALJ found that Plaintiff could return to her prior relevant work as a department store cashier (20 C.F.R. § 404.1565), and therefore, was not disabled under the Social Security Act (20 C.F.R. § 404.1520(f)).

## II.  Discussion

### A.  Standard of Review

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power

to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); see Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001).  The Commissioner's decisions as to questions of fact are conclusive upon a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); see Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  While the court must scrutinize the entire record to determine whether the Commissioner's findings are supported by such evidence, Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978), the standard is "highly deferential." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  "It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for that of the factfinder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

11

**B.    Standard for Entitlement of Benefits**

Disability insurance benefits may not be paid under the Social Security Act unless Plaintiff first meets the statutory insured status requirements.  See 42 U.S.C. § 423(c)).  Plaintiff must also demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423 (d)(2)(A).  The SSA establishes a five-step sequential process for an ALJ's evaluation of whether a person is disabled. See 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant has shown that he is not currently engaged in "substantial gainful activity."  20 C.F.R. § 404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).  A claimant currently engaged in substantial gainful activity is automatically denied disability benefits.  See 20 C.F.R. § 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether the claimant has demonstrated a "severe

impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); <u>see</u> <u>Bowen</u>, 482 U.S. at 146-7 n.5. Basic work activities relate to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." <u>Id.</u> A claimant who does not have a severe impairment is not disabled. 20 C.F.R. § 404.1520(c); <u>see</u> <u>Plummer</u>, 186 F.3d at 428. Third, if the impairment is found to be severe, the ALJ determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Listing"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that her impairments are equal in severity to or meet those on the Impairment List, the claimant has satisfied her burden of proof and is automatically entitled to benefits. <u>See</u> 20 C.F.R. § 404.1520(d); <u>see</u> <u>also</u> <u>Bowen</u>, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider the impairment most like the impairment to decide whether the impairment is medically equivalent. <u>See</u> 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. <u>Id.</u> An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical

13

findings equal in severity to all the criteria for the one most similar. Williams, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether she retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d); Bowen, 482 U.S. at 141. If the claimant is able to perform her previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. Plummer, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." Bowen, 482 U.S. at 146-47 n.5; Plummer, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. Id.

C. Plaintiff's Arguments on Appeal

Plaintiff contends that the ALJ's determination that her past

14

relevant work was a cashier/sales person does not comport with the definition under the Social Security Regulations of substantial gainful activity, since Plaintiff only performed the job for a relatively short period of time. Plaintiff further contends that the DOT classification provided by the ALJ (i.e., 211.462.012) is erroneous as Plaintiff's actual job duties differed from the description of the classification. Moreover, Plaintiff submits that the ALJ failed to mention, discuss, or analyze probative and material evidence which counsel submitted subsequent to the hearing, but prior to the ALJ's written decision. Instead, the ALJ, in arriving at Plaintiff's RFC, accorded more weight to non-treating physician's medical opinions. Finally, Plaintiff argues that the ALJ failed to properly analyze Plaintiff's subjective complaints of her condition and improperly discredited Plaintiff's abilities to perform activities of daily living.

> 1.  *Whether the ALJ's Determination that Plaintiff had the Residual Functional Capacity for a Full Range of Light Work is Supported by Substantial Evidence*

Preliminarily, the Court notes that Plaintiff does not dispute the ALJ's determination with respect to Plaintiff's severe impairments being degenerative disc disease of the cervical and lumbar spines. See 20 C.F.R. § 404.1520(c). Further, Plaintiff does not dispute that her impairments do not meet or medically equal, either singly or in combination, one of the impairments on the Listing. Rather, Plaintiff disputes the ALJ's next

15

determination that Plaintiff had the residual functional capacity
to perform full range of light work.  Plaintiff essentially argues
that the ALJ failed to mention, discuss or analyze pertinent and
material medical evidence submitted after the hearing.

In his decision, the ALJ considered Plaintiff's treating
physician, Dr. Lombardi's treatment and diagnosis with respect to
Plaintiff's lumbar spine condition until August 6, 2003, and Dr.
Patti's treatment and diagnosis with respect to Plaintiff's neck
problems in June 2004.  Next, the ALJ gave substantial weight to
consultative examinations performed by Dr. Merlin and Dr.
Schneider.  The ALJ found that there is a lack of evidence in the
record to support the fact that Plaintiff was so disabled that she
was precluded from all work activity.  The ALJ reasoned that the
objective medical evidence tends to show that the physicians did
not impose any restrictions on Plaintiff's functional abilities.
Thus, the ALJ concluded that Plaintiff retained the residual
functional capacity to lift and/or carry 20 pounds occasionally and
10 pounds frequently, consistent with Dr. Schneider's diagnosis.
In an 8-hour day, Plaintiff would be able to stand and/or walk
about 6 hours; sit about 6 hours; and she has unlimited use of her
upper and lower extremities for pushing/pulling.

While the Court recognizes that certain State agency
physicians' evaluations may constitute substantial evidence to
support the ALJ's findings, the ALJ's decision is devoid of any

16

discussion, or even mention, of certain probative medical evidence. In particular, on October 13, 2004, Dr. Lombardi indicated that Plaintiff's pain, as she recounted, was the same as it was prior to her surgeries.  Plaintiff felt well for 6-7 months but the pain became severe again.  The doctor recommended an epidural steroid injection, which he performed on November 11, 2004.  Plaintiff's last exam with Dr. Lombardi, on November 24, 2004, showed decreased flexion, decreased extension, decreased LLF, decreased RLF; an exam of the spine reveals palpatory spinous tenderness.  Dr. Lombardi indicated that Plaintiff had "difficulty with walking, standing, bending, sitting, lying, sleeping and [d]riving."  Admin. R. at 520. See Jakubowski v. Comm'r of Soc. Sec., 215 Fed. Appx. 104 (3d Cir. 2007)(it is the obligation of "the ALJ to review all medical evidence in the record and, if he chooses to discount some of that evidence, to explain fully his reasons for doing so").  While this Court is not commenting on whether Plaintiff ultimately can show that she is disabled in light of the foregoing evidence, the Court is mindful that the decision of the ALJ must explain why the ALJ has rejected medical evidence that supports Plaintiff, and which is inconsistent with other medical evidence and the ALJ's findings. "The ALJ is to address significant items of evidence that are in direct conflict with his findings. It is error for an ALJ to reject uncontradicted medical evidence without a clear statement of the reasons for doing so." Cotter v. Harris, 642 F.2d 700, 706 (3d

17

Cir. 1981).  As such, without discussion or proper reasoning why he rejected these medical diagnoses, the Court holds that the AJL's decision is not based on substantial evidence.  See Id. ("[s]ince it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper")(citations omitted); see also Reefer v. Barnhard, 326 F.3d 376, 381-82 (3d Cir. 2003).

Similarly, by not considering certain probative evidence, the Court questions the ALJ's decision to discredit Plaintiff's subjective complaints of pain.  Plaintiff testified at the hearing that despite her surgeries, her back felt worse than before the surgeries. Admin. R. at 537.  Additionally, Plaintiff testified to excruciating pain in her back, which radiated down to both legs and knee area; also, pain in her neck radiated down to both of her arms.

It is within the ALJ's discretion to evaluate the credibility of Plaintiff's complaints and render an independent judgment in light of the medical findings and other evidence regarding the true nature of Plaintiff's symptomatology.  LaCorte v. Bowen, 678 F. Supp. 80, 83 (D.N.J. 1988).  In his decision, the ALJ simply states that "although the claimant does have some subjective symptoms . . . the medical evidence of record does not confirm they were of the

18

intensity, frequency or duration alleged.   The functional limitations alleged do not seem credible because . . . [they] seem overly vague and exaggerated, considering the objective medical findings . . . ."  Admin. R. at 18.  Nowhere does the ALJ discuss on which aspects of the objective medical evidence his decision was based.  Rather, it appears that the ALJ relied primarily on Dr. Merlin's and Dr. Schneider's diagnoses, which lack any mention of pain; instead, the doctors mainly assessed Plaintiff's physical limitations.

While the Court is aware that Plaintiff's physical exams demonstrated that she had normal range of motion of her upper and lower extremities, nevertheless, since the inception of Plaintiff's surgeries, she continuously complained of pain.  This is evidenced by the pain medicine which was prescribed, and the epidural steroid injections that were administered as late as November 11, 2004.  In fact, Plaintiff's subjective complaints were noted in the majority of Dr. Lambordi's examinations.  The ALJ failed to mention these considerations in his decision.  See Cotter, 642 F.2d at 707 n.10 (the court does not have to consider the ALJ's bare recital of the boilerplate language that he "carefully considered all the testimony  . . . and exhibits . . ." to be sufficient).  Even if the ALJ was not convinced in light of the objective evidence, the ALJ failed to provide his reasons.  Accordingly, the Court finds that the ALJ may have improperly discredited Plaintiff's subjective

complaints.[2]

> 2.   *Whether the ALJ's Decision that Plaintiff Could
>       Perform Past Relevant Work as a Department Store
>       Cashier is Supported by Substantial Evidence*

In his decision, the ALJ stated that the past relevant work "must have been performed within the past 15 years or 15 years prior to the date that disability must be established.   In addition, the work must have lasted long enough for the claimant to learn to do the job and meet the definition of substantial gainful activity."   Admin. R. at 19; see 20 C.F.R. §§ 404,156(A), 416.96(A).   Moreover, "[t]o be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." Admin. R. at 19.   Next, the ALJ found that the evidence in this case established that the claimant has past relevant work as a department cashier, which the Dictionary of Occupational Titles describes as light in exertional demand (DOT# 211.462-010).   Having already concluded

---

As a reference, Social Security Ruling, SSR, 96-7 identifies seven examples of the type of evidence the ALJ should consider in addition to the objective medical evidence when assessing the credibility of an individual statement.  These include 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type dosage, effectiveness, and side effects of any medication the individual takes, or has taken to alleviate the pain or other symptoms; 5) treatment other than medication the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.   Id.

that Plaintiff has the residual functional capacity to perform light work, the ALJ found that Plaintiff could perform her past relevant work as a cashier.[3]

The ALJ's decision categorizing Plaintiff's past work experience as a department store cashier is perplexing. During the hearing, the ALJ questioned Plaintiff briefly on her previous work experience. Based on the questions, Plaintiff answered that her last job before claiming disability was at Wegman's Supermarket in October 2002.[4] From 2000 to October 2002, Plaintiff had a similar position. Prior to that, Plaintiff worked at Stern's Department Store as a sales associate. Plaintiff also stated that she worked at the lunch program at the Edison Board of Education performing cafeteria work. At no time during the hearing did the ALJ question Plaintiff's duties at these jobs (i.e., what type of work, how much time sitting and standing was required of each job, or how much weight was she "actually" lifting for each particular job). Instead, the ALJ, without an explanation, categorized Plaintiff's

---

[3]As set forth in SSR 82-62, Plaintiff's previous work experience should satisfy three criteria before such work experience will be deemed to be past relevant work. First, previous work experience must have been substantial gainful activity; second, previous work experience must have satisfied a duration criterion; third, previous work experience must have also satisfied a recency criterion.

[4]Plaintiff first answered that she stopped working in 2003 at Wegman's, however, she later corrected the date.

relevant work experience as "department store cashier."[5]  Again, this Court does not comment on the merit of that determination; however, because the decision lacks the analysis of how the ALJ arrived at such conclusion, the Court finds the ALJ may have improperly designated Plaintiff's past relevant work.

Accordingly, because the Court, after reviewing the record, finds that the ALJ's decision lacked a discussion of certain medical evidence, and in light of that evidence, the ALJ may have improperly discounted Plaintiff's subjective complaints, and the ALJ's lack of explanation pertaining to his designation of Plaintiff's past relevant work, the Court will remand this matter to the Commissioner to further develop the record consistent with this Opinion.

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

---

[5]Plaintiff suggests that her past relevant work should be Salesperson, General Merchandise (DOT# 279.357.054), pursuant to the Dictionary of Occupational Title, which is more appropriate for the duties that Plaintiff actually performed at Stern's Department Store.  However, because the record was insufficiently developed on this issue, the Court shall reserve and remand this determination for the ALJ.

22